## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| TODD S. ELWERT, DC, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons, | Case No: 5:15-cv-2223 -SL |
| Plaintiff, | Judge: Sara Lioi<br>Magistrate Judge: George J. Limbert |
| vs. | |
| ALLIANCE HEALTHCARE SERVICES, INC. and JOHN DOES 1-10, | **PLAINTIFFS' MOTION FOR CERTIFICATION OF CLASS AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT** |
| Defendants. | |
| SANDUSKY WELLNESS CENTER, LLC, an Ohio limited liability company, individually and as the representative of a class of similarly-situated persons, | Case No. 3:15-cv-2673 Consolidated Into Case No. 5:15-cv-2223 |
| Plaintiffs, | |
| vs. | |
| WOODLAND DIAGNOSTIC IMAGING, LLC;) ALLIANCE HEALTHCARE SERVICES, INC.;) ALLIANCE HEALTHCARE, INC.; ALLIANCE HEALTHCARE, LLC; and JOHN DOES 1-10, | |
| Defendants. | |

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Todd S. Elwert,

D.C., Inc. ("Elwert Chiropractic") and Sandusky Wellness Center, LLC. (collectively referred to

1

as "Plaintiffs" or "Named Plaintiffs") respectfully submit this Memorandum in Support of

Motion for Certification of Class and Preliminary Approval of Class Settlement Agreement.

Respectfully submitted,

*/s/Matthew E. Stubbs*
GEORGE D. JONSON (0027124)
MATTHEW E. STUBBS (0066722)
MONTGOMERY, RENNIE & JONSON
36 E. Seventh Street, Suite 2100
Cincinnati, Ohio  45202
(513) 241-4722
(513) 241-8775 (fax)
Email: gjonson@mrjlaw.com
        mstubbs@mrjlaw.com

*Counsel for Todd S. Elwert, D.C., Inc*

## MEMORANDUM IN SUPPORT

## I.    INTRODUCTION / STATEMENT OF FACTS

This case arises from an alleged violation of the Telephone Consumer Protection Act

("TCPA"), a federal law that has been in effect for over twenty years.  Under the JFPA, which

was modified and renamed the Junk Fax Prevention Act ("JFPA") in 2005, it is unlawful to send

unsolicited advertisements to someone's fax machine.[1]  Under the JFPA, an "unsolicited

advertisement means any material advertising the commercial availability or quality of any

property, good, or services which is transmitted to any person without that person's prior express

invitation or permission, in writing or otherwise."[2]  Additionally, with the exception of

advertisements that are expressly solicited by the recipient, facsimile advertisements must

---

[1]     47 U.S.C. 227(b)(1)("It shall be unlawful for any person . . . to send, to a telephone facsimile machine, an unsolicited advertisement").

[2]     47 U.S.C. § 227(a)(5).

include an opt-out notice that informs the recipient of the right to demand that the sender stop sending advertisements to their fax machine.[3]  As for damages, the JFPA permits private rights of actions and provides statutory damages of $500.00 per violation.[4]

On September 14, 2015, both Elwert Chiropractic and Sandusky Wellness received a document via facsimile ("the Alliance Imaging Fax")[5] that touted the availability and quality of the medical imaging equipment and services of "Alliance Imaging of Belden Village."  Elwert Chiropractic's facilities are located in the Cincinnati area; Sandusky Wellness's facility is located in the Sandusky area.  Alliance Imaging of Belden Village is located in the Akron-Canton area.  Neither of the Plaintiffs had requested or given permission to receive advertisements for Alliance Imaging of Belden Village via their respective office fax machine/fax numbers.  As such, Elwert Chiropractic field suit against Defendant Alliance Healthcare Services, Inc. ("Alliance Healthcare") on behalf of itself and the other persons/entities who received the Alliance Imaging Fax for violations of the JFPA.  Sandusky Wellness filed a separate suit seeking essentially the same relief and few months later, and the two cases were consolidated.

In the course of its discovery responses and document production, Alliance Healthcare acknowledged the Alliance Imaging Fax Ad was sent to the fax numbers of 2,483 chiropractors

---

[3]      73 Fed. Reg. 64556 at 64556, ¶ 3 ("The Junk Fax Prevention Act also requires that all unsolicited facsimile advertisements include an opt-out notice that instructs recipients on how to notify senders that they do not wish to receive future facsimile advertisements."); 71 Fed. Reg. 25967 at 25969 ("the Junk Fax Prevention Act . . . requires senders to include a notice on the first page of the unsolicited advertisement that instructs the recipient how to request that they not receive future unsolicited facsimile advertisements from the sender.")

[4]      47 U.S.C. § 227(b)(3)(A)-(C)("A person or entity may . . . recover actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.").

[5]      A true and accurate copy of the Alliance Imaging Fax is attached as Exhibit 1-A to the Class Settlement Agreement, which is attached hereto as Exhibit 1.

across Ohio – 1,733 of which were successfully received[6] – and that it obtained the fax numbers for these chiropractors from the Ohio State Chiropractic Board.[7]  Alliance Healthcare has acknowledged that it did not seek permission from the chiropractors before sending the Alliance Imaging Fax to their fax machines.

As the discovery phase ended, the parties requested a mediation with Magistrate Limbert, which was scheduled for February 2, 2018.[8]  The parties reached an agreement to settle the case on a class-wide basis shortly before the mediation.  Per the terms of the proposed settlement ("the Class Settlement Agreement"[9]), the parties have agreed to the certification of a class consisting of the 1,733 successful recipients (the "Class Members") of the Alliance Imaging Fax.[10]  Additionally, Alliance Healthcare has agreed to pay up to $866,500.00 to settle the claims of the Class Members.[11]  This amount represents the full statutory damage of $500.00 for each of the 1,733 Class Members.  In accordance with this agreement, Plaintiffs respectfully request that this Court enter an order: (i) certifying a class and preliminarily approving the Class Settlement Agreement; (ii) appointing the Plaintiffs as representatives of the class and Plaintiffs' counsel as

---

[6]     The target and recipients of the Alliance Imaging Fax are listed on a document called "Report Parameters." A true and accurate copy of the Report Parameters is attached hereto to as Exhibit 1-B to the Class Settlement Agreement, which is attached hereto as Exhibit 1.

[7]     *See* Defendants Alliance Healthcare Discovery Responses, Response to Interrogatory No. 2 ("The list of recipients of the 9/14/15 Fax Ad was obtained from the publicly available Ohio State Chiropractic Board's website."")

[8]     *See* Order (ECF No. 41)("a **MEDIATION** is scheduled in the above-captioned matter before the undersigned . . . on February 28, 2018")(*emphasis in original*).

[9]     The Class Settlement Agreement is attached and incorporated herein as Exhibit 1.

[10]    Class Settlement Agreement, ¶ 2 ("The Parties agree to the certification of a class for the purposes of settlement ("the Settlement Class").  The Settlement Class shall be described as follows: "All persons or entities who successfully received, on or about September 14, 2015, the Alliance Imaging Fax." . . . There are 1,733 persons/entities in the Settlement Class").

[11]    Class Settlement Agreement, ¶ 4 ("Defendants will make available a common fund of $866,500.00").

4

counsel for the class; (iii) approving the proposed Notice of Class Action and Proposed Settlement[12]; and (iv) setting a date for the final approval hearing.

## II.      DESCRIPTION OF THE PROPOSED SETTLEMENT

In consideration for a release of claims by the Class Members "occasioned by their receipt of the Alliance Imaging Fax"[13], Alliance Healthcare has agreed to pay the total sum of $866,500.00 into a settlement fund ("the Settlement Fund").  Pursuant to the terms of the Class Settlement Agreement, counsel for the Class Members ("Class Counsel") proposes to allocate the Settlement Fund among the Class Members, Named Plaintiffs, and Class Counsel as follows.

### A.      Attorney Fees, Costs, and Administration Expenses

Class Counsel anticipates requesting an award of attorney's fee award of $288,833.33, which represents 33% of the Settlement Fund ("the Attorney Fee Award").  As is customary in class actions involving a common fund, this Attorney Fee Award would be deducted from the Settlement Fund.  Additionally, Class Counsel anticipates requesting an award of expenses incurred in the prosecution of this claim, which would also be deducted from the Settlement Fund.  At present, Montgomery, Rennie & Jonson has incurred expenses of $3,348.04, and Anderson+Wanca has incurred expenses of $3,042.41 for a total of $6,390.45.  The proposed third-party administrator, Dahl Administration, has provided an estimate for its services of $17,826.[14]  Accordingly, the requested expenses will likely be approximately $24,216.45.

### B.      Incentive Award to Plaintiffs/Proposed Class Representatives

Class Counsel also anticipates seeking an award for each of the Plaintiffs for their service

---

[12]     The proposed Notice of Class Action and Proposed Settlement is attached as Exhibit C to the Class Settlement Agreement.

[13]     Class Settlement Agreement, ¶ 7.

[14]     A true and accurate copy of the estimate from Dahl Administration is attached hereto as Exhibit 2.

as Class Representatives ("the Named Plaintiff Awards") of $8,250.  This would also be deducted from the Settlement Class Fund.  Aside from their allocated shares as Class Members, which is described below, the Named Plaintiff Awards represents the entire relief obtained by Plaintiffs for their service as representatives of the class.

      **C.**        **Allocation of Remaining Settlement Fund**

After deducting the proposed Attorney Fee Award, proposed Named Plaintiff Awards, and anticipated expenses, the remaining Settlement Fund would consist of $536,950.22.  This amount would then be distributed to the Class Members on a *pro rata* basis, up to a maximum of $500.00 per Class Member.  If 100% of the Class Members submit valid claims, each Class Member would receive $309.84.  If 62% or less of the Class Members submit valid claims, each would receive $500.00.  Class Counsel anticipates that that a substantial portion of the Settlement Fund will be exhausted by the claims of the Settlement Class Members.  However, if the Settlement Fund is not completely exhausted – whether resulting from fewer claims or uncashed checks – any remaining funds will be retained by Alliance Healthcare.

**III.**      **THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL**

The Sixth Circuit has established a three-step procedure for approval of a settlement agreement of a class action: "The settlement shall first be preliminarily approved by the court. Then notice must be given to interested persons.  Finally, the court must decide whether the settlement agreement is reasonable after having held a hearing."[15]  Under Federal Civil Rule 23(e)(2), a class action settlement should be approved "on finding that it is fair, reasonable, and

---

[15]      *Thonen v. McNeil-Akron, Inc.*, 661 F. Supp. 1276, 1279 (N.D. Ohio 1987); *see also Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

adequate."  Additionally, "[i]n making this determination, the court evaluates the proposed class action settlement in light of the general federal policy favoring the settlement of class actions."[16]

Because settlement is the "preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."[17]  Consistent with this presumption, this Court need only "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."[18]  The Sixth Circuit has established seven factors ("the *UAW* factors") for a district court to consider in deciding whether to approve a proposed class action settlement:

> A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[19]

Finally, this Court has the discretion to "choose to consider only those factors that are relevant to the settlement and . . . weigh particular factors according to the demands of the case."[20]  As set

---

[16]     *IUE-CWA*, 238 F.R.D. at 593 (E.D. Mich. 2006); *see also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991)("The law generally favors and encourages the settlement of a class action.); *see also UAW v. GM*, 2006 WL 891151, at *12 (E.D. Mich. 2006)(also recognizing "the general federal policy favoring the settlement of class actions").

[17]     *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001).

[18]     *UAW v. GM*, 2006 U.S. Dist. LEXIS 14890, at *40 (E.D. Mich. 2006); *see also Shy v. Navistar Int'l Corp.*, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993)("It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable.").

[19]     *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013)(*quoting UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. Mich. 2007)).

[20]     *See UAW*, 497 F.3d at 631.

forth below, all of these factors demonstrate the Class Settlement Agreement is fair, reasonable, and adequate.

      **(1).**    **The Risk of Fraud or Collusion**

      The first *UAW* factor favors approval of the Class Settlement Agreement because there is no risk of fraud or collusion.  The interests of the Plaintiff and the Defendant are fundamentally adverse, and, aside from the Named Plaintiff Awards, the Named Plaintiffs are not receiving any relief different in kind or character from the Class Members.  Moreover, the Class Settlement Agreement was achieved with the assistance and participation of Magistrate Judge Limbert.  Nothing in the negotiation process or agreement itself raises any concerns of collusion or fraud.

      This contrasts with the collusive nature of the settlement in *Vassalle v. Midland Funding*[21], a recent class action certification that was reversed by the Sixth Circuit Court of Appeals.  In *Vassalle,* a debt collector was counter-claimed by three sets of debtors, who all alleged that the debt collector was using fraudulent "robo-affidavits" to establish its claims.  The debtors all sought certification of a class, and the parties settled on a classwide basis, which the U.S. District Court for the Southern District of Ohio approved.  On appeal, the Sixth Circuit reversed the class certification principally because "the settlement gives preferential treatment to the Named Plaintiff while only perfunctory relief to unnamed class members."[22]  Specifically, the Named Plaintiff received an incentive award of thousands of dollars as well as forgiveness of its debts also worth thousands.  In contrast, each of the absent class members would have received only a few dollars from the common fund; no forgiveness of their debts; and, most

---

[21]      2708 F.3d 747 (6th Cir. 2013).

[22]      *Id.* at 12 (*internal quotations and citation omitted*).

egregiously, were stripped of defenses they might have had if the debt collector eventually sued them.  In effect, the proposed settlement would have left the absent class members worse off while providing the class representatives and their counsel with substantial benefits.

This Class Settlement Agreement in this case raises no such concerns.  First, Plaintiffs are not receiving debt forgiveness or any other remedy not also provided to the Class Members.  On the contrary, aside from the Named Plaintiff Awards, which are subject to this Court's approval, the Named Plaintiffs are receiving the exact same relief as the Class Members.  Second, the relief provided to the Class Members is not perfunctory.  On the contrary, each Class Member will likely receive their full statutory damages of $500.00 and can receive no less than $309.84.

### (2).  Complexity, Expense, and Likely Duration of the Litigation

The second *UAW* factor also favors approval of the Class Settlement Agreement.  This case was originally filed in October of 2015.  Although junk fax claims are not especially complex or expensive, no class action is simple.  In this case, the parties litigated a number of discovery disputes, conducted written discovery, and took depositions before engaging in settlement negotiations.  Class Counsel has spent hundreds of hours prosecuting this action to this point.  Although much of the work in the case has now been completed, approval of the Class Settlement Agreement resolves the remaining issues and provides relief to the class members without the expense and risk of more litigation, the possibility of an appeal, *etc.*

### (3).  The Amount of Discovery Engaged in by the Parties

The third *UAW* factor also favors approval of the Class Settlement Agreement.  Plaintiffs sent several sets of written discovery to Alliance Healthcare, which included interrogatories, document requests, and requests for admission.  The Plaintiffs deposed multiple witnesses from Alliance Healthcare, and the parties formally litigated multiple discovery disputes.  Finally, the

9

parties reached their agreement to settle as additional depositions were pending and they prepared for a formal mediation with Magistrate Limbert.

### (4).    The Likelihood of Success on the Merits

The fourth *UAW* factor also favors approval of the Class Settlement Agreement.  While the transmission of the Alliance Imaging Fax appears to be a clear violation of the JFPA, prevailing on a JFPA claim is hardly easy.  The JFPA provides statutory damages of $500.00 for each violation.[23]  However, the JFPA does not provide for attorney fees, so individual claimants must generally proceed *pro se*.   Needless to say, few individual claimants are willing to undertake the expense and ordeal of a lawsuit for the prospect of a winning a few hundred dollars.   Finally, despite being in effect for over twenty years, the prohibition of facsimile advertising in the JFPA appears to be virtually unknown in the public at-large. The confluence of these factors – minimal damages; the inability to obtain counsel; and popular ignorance of the law – effectively preclude individual claims under the JFPA.

This case is no exception.  Despite Alliance Healthcare's transmission of 1,733 facsimile advertisements in multiple states, the only recipients who filed suit were Plaintiffs.  Absent the prospect of incentive awards, the Plaintiffs would not have done so in this case.  Due to the efforts of Plaintiffs and Class Counsel – and in accordance with the Class Settlement Agreement – each person who received a facsimile advertisement from Alliance Healthcare will have an opportunity to recover most, and likely all, of their statutory damages by completing and returning a simple claim form.  This outcome far exceeds the negative value of an individual claim or the uncertainty of a class action.

---

[23]    47 U.S.C. § 227(b)(3)(A)-(C)("A person or entity may . . . recover actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.").

**(5).    The Opinions of Class Counsel and Class Representatives**

The fifth *UAW* factor also favors approval of the Class Settlement Agreement.  Class Counsel has prosecuted numerous class actions involving alleged violation of the JFPA, for which the ultimate goal is obtaining the full statutory damages for each member of the class. Given the increased stakes of a class action, these cases are invariably defended both capably and vigorously.  In this case, each person who received the Alliance Imaging Fax will have the opportunity to receive their full statutory damages by completing a simple claim form.  By any measure, this is a successful outcome for the Class Members, and Class Counsel endorses the proposed settlement without reservation.

**(6).    The Reaction of Absent Class Members**

The sixth *UAW* factor cannot be assessed at this time as the Class Members have not been advised of the settlement.  However, Class Counsel anticipates that few, if any, Class Members will object or opt-out of the proposed settlement.

**(7).    Public Interest**

The seventh *UAW* factor strongly favors approval of the Class Settlement Agreement. The JFPA has gone largely unenforced by the F.C.C. and the other public entities that are primarily responsible for doing so.  Additionally, individual actions under the JFPA are rare and little more than a nuisance to large-scale violators of the JFPA.  Accordingly, class actions such as this are the only effective means of enforcing this decades-old law.

**IV.    THE PROPOSED METHOD AND FORM OF NOTICE IS BOTH REASONABLE AND APPROPRIATE**

Shortly after this Court's preliminary approval of the Class Settlement Agreement, Class Counsel will formally retain a class administrator and instruct it to begin administration of the

11

class relief.  Per the proposed administration plan, the Class Members would receive notice by facsimile, e-mail, and direct mail.  The proposed Notice of Class Action and Proposed Settlement is attached hereto as Exhibit 3.

The purpose of notice in a class action is to "afford members of the class due-process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment."[24] Constitutional due-process requires that absent class members be provided "notice [that is] the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[25]  The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process.[26]  There is no question that notice via facsimile, e-mail, and direct mail is sufficient to meet these standards.

As for the substance of the Notice of Class Action and Proposed Settlement, each of the Class Members will be advised of the pendency of this action, the nature of the suit, the identity of Class Counsel, and their options as a Class Member.  Finally, the proposed Notice will provide the Class Members with the form[27] needed to claim a share of the Settlement Fund.

---

[24]      *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992)(*citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)).

[25]      *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)("If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar  relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")(*internal quotation and citation omitted*).

[26]      *Grunin v. Intern'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1974).

[27]      A true and accurate copy of the claim form (captioned "Proof of Claim") is attached as Exhibit 1-C to the Class Settlement Agreement.  The Class Settlement Agreement is attached hereto as Exhibit 1.

This form is simple to understand, easy to complete, and requires no proof that would be difficult for the Class Members to obtain.  Aside from the formal Notice, Class Counsel will attempt to contact each one of the Class Members directly to encourage them to return a claim form, thereby entitling them to a share of the Settlement Fund.

## V.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs Todd S. Elwert, D.C., Inc. and Sandusky Wellness Center, LLC. respectfully request that this Court enter an order: (i) certifying a class and preliminarily approving the Class Settlement Agreement; (ii) appointing the Plaintiffs as representatives of the class and Plaintiffs' counsel as counsel for the class; (iii) approving the proposed Notice of Class Action and Proposed Settlement; and (iv) setting a date for the final approval hearing.

A copy of the proposed order has been attached hereto as Exhibit 4.

Respectfully submitted,


*/s/ Matthew Stubbs*
George D. Jonson (80926)
Matthew E. Stubbs (90759)
MONTGOMERY, RENNIE & JONSON
36 East Seventh Street
Cincinnati, OH  45202
513-241-4722
513-241-8775 (fax)
Email: gjonson@mrjlaw.com
           mstubbs@mrjlaw.com

*Counsel for Plaintiff Todd S. Elwert, D.C., Inc.*

AND

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA

13

3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
847-368-1500
847-368-1501 (fax)

*Counsel for Plaintiff Sandusky Wellness Center, LLC.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

*/s/ Matthew E. Stubbs*

14