# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TODD S. ELWERT, DC, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>vs.<br><br>ALLIANCE HEALTHCARE SERVICES, INC. and JOHN DOES 1-10,<br><br>Defendants. | Case No: 5:15-cv-2223 -SL<br><br>Judge: Sara Lioi<br>Magistrate Judge: George J. Limbert<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT** |
| SANDUSKY WELLNESS CENTER, LLC, an Ohio limited liability company, individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>WOODLAND DIAGNOSTIC IMAGING, LLC; ALLIANCE HEALTHCARE SERVICES, INC.; ALLIANCE HEALTHCARE, INC.; ALLIANCE HEALTHCARE, LLC; and JOHN DOES 1-10,<br><br>Defendants. | Case No. 3:15-cv-2673 Consolidated Into Case No. 5:15-cv-2223 |

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Todd S. Elwert, D.C., Inc. and Sandusky Wellness Center, LLC. (collectively referred to as "Plaintiffs" or

1

"Named Plaintiffs") respectfully submit this Memorandum in Support of Motion for Final Approval of Class Settlement Agreement.

        Respectfully submitted,

        */s/Matthew E. Stubbs*
        GEORGE D. JONSON (0027124)
        MATTHEW E. STUBBS (0066722)
        MONTGOMERY, RENNIE & JONSON
        36 E. Seventh Street, Suite 2100
        Cincinnati, Ohio 45202
        (513) 241-4722
        (513) 241-8775 (fax)
        Email: gjonson@mrjlaw.com
                mstubbs@mrjlaw.com

        *Counsel for Todd S. Elwert, D.C., Inc*

        AND

        Brian J. Wanca
        Ryan M. Kelly
        ANDERSON + WANCA
        3701 Algonquin Road, Suite 760
        Rolling Meadows, IL 60008
        847-368-1500
        847-368-1501 (fax)

        *Counsel for Plaintiff Sandusky Wellness Center, LLC.*

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION / STATEMENT OF FACTS**

With respect to the facts of the case in general, Plaintiffs respectfully direct this Court to the Memorandum in Support of Plaintiffs' Motion for Preliminary Approval (ECF No. 48), which included a lengthy recitation of the basic facts and the procedure up to that point. On June 1, 2018, this Court granted preliminary approval of the Class Settlement Agreement (ECF No. 48-1).[1] In compliance with that Order, Dahl Administration, LLC, the third-party administrator, administered the class. This began with the sending of Class Action Fairness Act notices to the Attorneys General of the States of Alabama, California, Kentucky, Michigan, North Carolina, Ohio, Tennessee, Texas, West Virginia, Indiana, Pennsylvania, and Illinois on May 18, 2018.[2] No objections or inquiries have been received from any of these offices.[3]

Dahl Administration then began notifying the Class Members of the proposed settlement by sending them the Notice of Proposed Class Action Settlement ("the Notice"). As described by Kimberly Ness, Dahl Administration sent the Notice to 1,741 Class Members via fax on June 8 and again on June 12.[4] Dahl Administration sent the Notice to 1,659 Class Members on June 11 via e-mail; a second time via e-mail to 1,549 Class Members on June 14, and a third time via e-mail to 993 Class Members on June 15.[5] Finally, Dahl Administration sent the Notice to 1,571

---

[1]     *See* Order Granting Certification of a Class and Preliminary Approval of Class Settlement Agreement, p. 1 (ECF No. 49)("Upon consideration of Plaintiffs' Motion for Certification of Class and Preliminary Approval of Class Settlement Agreement, this Court **GRANTS** the Motion")

[2]     Declaration of Kimberly K. Ness With Respect to Administration Duties ("Ness Declaration"), ¶ 7. The Ness Declaration is attached hereto as Exhibit A.

[3]     Ness Declaration, ¶ 7

[4]     Ness Declaration, ¶ 9.

[5]     Ness Declaration, ¶ 10.

Class Members via regular mail on June 15, 2018.[6]

The deadline for Class Members to opt-out or object to the Class Settlement Agreement was August 7, 2018.[7] Only seven Class Members opted out, and no Class Member submitted an objection of any kind.[8] The Class Members returned 569 claim forms – a claim rate of approximately 40% of the identified Class Members. Of these claim forms, all but four were valid (meaning they matched a fax number/name on the transmission list) and only one was untimely.

## II. DESCRIPTION OF THE PROPOSED SETTLEMENT

The parties' proposed settlement was formally set forth in the Class Settlement Agreement. In consideration for a release of claims by the Class Members "occasioned by their receipt of the Alliance Imaging Fax"[9], Alliance Healthcare agreed to pay the total sum of $866,500.00 into a settlement fund ("the Settlement Fund"). Pursuant to the terms of the Class Settlement Agreement, counsel for the Class Members ("Class Counsel") proposes to allocate the Settlement Fund as follows.

### A. Payments to Class Members

Pursuant to the terms of the Class Settlement Agreement, each Class Member who submitted a valid claim form will receive $500.00. Setting aside the duplicates and an untimely submission, the Class Members submitted 475 valid claim forms. Accordingly, these Class

---

[6] Ness Declaration, ¶ 11.

[7] Ness Declaration, ¶ 17.

[8] Ness Declaration, ¶ 20.

[9] Class Settlement Agreement, ¶ 7 (ECF No. 48-1).

Members should receive a total of $237,500 from the Settlement Fund.

### B. Attorney Fees and Litigation Expenses

Class Counsel requests an award of attorney's fee award of $288,833.33, which represents one third of the Settlement Fund ("the Attorney Fee Award"). Additionally, Class Counsel requests an award of expenses incurred in the prosecution of this claim in the amount of $6,590.72. Montgomery, Rennie & Jonson has incurred expenses of $5,048.31 to this point.[10] Anderson+Wanca has incurred expenses of $1,542.41.[11] Additionally, Class Counsel estimates an additional $500.00 in expenses associated with travel to the final approval hearing and incidental expenses. All of these expenses consist of ordinary litigation expenses such as filing fees, postage, travel expenses, administrative services, *etc.* Accordingly, Class Counsel proposes that this Court award Attorney Fees in the amount of $288,833.33 and litigation expenses in the amount of $6,590.72.

### C. Class Administration Fees

Dahl Administration provided an initial estimate for its services of $17,826 on April 24, 2018.[12] This was the lowest estimate received for the administration of the class by a substantial margin. Class Counsel requested a number of modifications from the work proposed in Dahl Administration's initial proposal, all of which Dahl Administration accommodated. Dahl Administration estimates that the final fee its services will be approximately $24,000. Class Counsel believes that Dahl Administration's work was excellent and its fee well-deserved.

---

[10] *See* Declaration of Matthew E. Stubbs, ¶ 9. The Declaration of Matthew E. Stubbs is attached hereto as Exhibit B.

[11] *See* Declaration of Matthew E. Stubbs, ¶ 10.

[12] A true and accurate copy of the initial estimate from Dahl Administration is attached hereto as B-1.

### B.     Incentive Awards to Plaintiffs/Proposed Class Representatives

Class Counsel also requests an award for each of the Plaintiffs for their service as Class Representatives ("the Incentive Awards") of $8,250. Aside from their allocated shares as Class Members, which is described below, the Incentive Awards represents the entire relief obtained by Plaintiffs for their service as representatives of the class. These proposed Incentive Awards were disclosed in the Class Settlement Agreement and prompted no objections from any Class Members.[13]

As many courts have recognized, "[i]t is very common in class action cases for service or incentive payments to be paid to named Plaintiffs or class representatives in addition to their proportionate share of the recovery. Such payments compensate Plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action."[14] Accordingly, Class Counsel proposes that each of the Named Plaintiffs receive an Incentive Award of $8,250 from the Settlement Fund.

### C.     Allocation of Remaining Settlement Fund

The sum of all of the payments proposed from the Settlement Fund would be $599,750.05. This consists of the following: (1) payments to Class Members of $237,500.00; (2) the proposed Attorney Fee Award of $288,833.33; (3) proposed litigation expenses of $6,590.72;

---

[13]     Class Settlement Agreement, ¶ 7 (ECF No. 48-1) ("Defendants agree to pay and will not oppose a request for an incentive award of up to $8,250 to each Plaintiff for their participation in the litigation and service to the class (the "Incentive Awards")).

[14]     *Faile v. Lancaster County*, 2012 U.S. Dist. LEXIS 189610. *41 (D.S.C. 2012); *see also Huguley v. General Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich. 1989)("Named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burdens of litigation that they have borne."); *Gulino v. Symbol Techs., Inc.*, 2007 U.S. Dist. LEXIS 76915, *5 (E.D.N.Y. 2007)("Payments to class representatives can properly be included in class action settlements . . . to compensate the named plaintiffs for the efforts they have made on behalf of the class.")

(4) the proposed Incentive Awards of $8,250.00; and (5) proposed class administration fees of approximately $24,000. Deducting these figures from the Settlement Fund would leave a balance of $292,715.95. This amount, along with any amounts from uncashed checks to Class Members, would be returned to Alliance Healthcare.

### III. THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

The Sixth Circuit has established a three-step procedure for approval of a settlement agreement of a class action: "The settlement shall first be preliminarily approved by the court. Then notice must be given to interested persons. Finally, the court must decide whether the settlement agreement is reasonable after having held a hearing."[15] Under Federal Civil Rule 23(e)(2), a class action settlement should be approved "on finding that it is fair, reasonable, and adequate." Additionally, "[i]n making this determination, the court evaluates the proposed class action settlement in light of the general federal policy favoring the settlement of class actions."[16]

Because settlement is the "preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."[17] Consistent with this presumption, this Court need only "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

---

[15] *Thonen v. McNeil-Akron, Inc.*, 661 F. Supp. 1276, 1279 (N.D. Ohio 1987); *see also Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

[16] *IUE-CWA*, 238 F.R.D. at 593 (E.D. Mich. 2006); *see also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991)("The law generally favors and encourages the settlement of a class action.); *see also UAW v. GM*, 2006 WL 891151, at *12 (E.D. Mich. 2006)(also recognizing "the general federal policy favoring the settlement of class actions").

[17] *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001).

7

whole, is fair, reasonable and adequate to all concerned."[18] The Sixth Circuit has established seven factors ("the *UAW* factors") for a district court to consider in deciding whether to approve a proposed class action settlement:

> A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[19]

Finally, this Court has the discretion to "choose to consider only those factors that are relevant to the settlement and . . . weigh particular factors according to the demands of the case."[20] As set forth below, all of these factors demonstrate the Class Settlement Agreement is fair, reasonable, and adequate.

### (1). The Risk of Fraud or Collusion

The first *UAW* factor favors approval of the Class Settlement Agreement because there is no risk of fraud or collusion. The interests of the Plaintiff and the Defendant are fundamentally adverse, and, aside from the Incentive Awards, the Named Plaintiffs are not receiving any relief different in kind or character from the Class Members. Moreover, the Class Settlement Agreement was achieved with the assistance and participation of Magistrate Judge Limbert. Nothing in the negotiation process or agreement itself raises any concerns of collusion or fraud.

---

[18] *UAW v. GM*, 2006 U.S. Dist. LEXIS 14890, at *40 (E.D. Mich. 2006); *see also Shy v. Navistar Int'l Corp.*, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993)("It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable.").

[19] *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013)(*quoting UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. Mich. 2007)).

[20] *See UAW*, 497 F.3d at 631.

8

This contrasts with the collusive nature of the settlement in *Vassalle v. Midland Funding*[21], a recent class action certification that was reversed by the Sixth Circuit Court of Appeals. In *Vassalle,* a debt collector was counter-claimed by three sets of debtors, who all alleged that the debt collector was using fraudulent "robo-affidavits" to establish its claims. The debtors all sought certification of a class, and the parties settled on a classwide basis, which the U.S. District Court for the Southern District of Ohio approved. On appeal, the Sixth Circuit reversed the class certification principally because "the settlement gives preferential treatment to the Named Plaintiff while only perfunctory relief to unnamed class members."[22] Specifically, the Named Plaintiff received an incentive award of thousands of dollars as well as forgiveness of its debts also worth thousands. In contrast, each of the absent class members would have received only a few dollars from the common fund; no forgiveness of their debts; and, most egregiously, were stripped of defenses they might have had if the debt collector eventually sued them. In effect, the proposed settlement would have left the absent class members worse off while providing the class representatives and their counsel with substantial benefits.

This Class Settlement Agreement in this case raises no such concerns. First, Plaintiffs are not receiving debt forgiveness or any other remedy not also provided to the Class Members. On the contrary, aside from the Incentive Awards, which are subject to this Court's approval, the Named Plaintiffs are receiving the exact same relief as the Class Members. Second, the relief provided to the Class Members is not perfunctory. On the contrary, each Class Member who submitted a valid claim will receive their full statutory damages of $500.00.

    **(2).**    <u>**Complexity, Expense, and Likely Duration of the Litigation**</u>

---

[21]    2708 F.3d 747 (6th Cir. 2013).

[22]    *Id.* at 12 (*internal quotations and citation omitted*).

The second *UAW* factor also favors approval of the Class Settlement Agreement. This case was originally filed in October of 2015. Although junk fax claims are not especially complex or expensive, no class action is simple. In this case, the parties litigated a number of discovery disputes, conducted written discovery, and took depositions before engaging in settlement negotiations. Class Counsel has spent hundreds of hours prosecuting this action to this point. Although much of the work in the case has now been completed, final approval of the Class Settlement Agreement resolves the remaining issues and provides relief to the class members without the expense and risk of more litigation, the possibility of an appeal, *etc.*

### (3). The Amount of Discovery Engaged in by the Parties

The third *UAW* factor also favors approval of the Class Settlement Agreement. Plaintiffs sent several sets of written discovery to Alliance Healthcare, which included interrogatories, document requests, and requests for admission. The Plaintiffs deposed multiple witnesses from Alliance Healthcare, and the parties formally litigated multiple discovery disputes. Finally, the parties reached their agreement to settle as additional depositions were pending and they prepared for a formal mediation with Magistrate Limbert.

### (4). The Likelihood of Success on the Merits

The fourth *UAW* factor also favors approval of the Class Settlement Agreement. While the transmission of the Alliance Imaging Fax appears to be a clear violation of the JFPA, prevailing on a JFPA claim is hardly easy. The JFPA provides statutory damages of $500.00 for each violation.[23] However, the JFPA does not provide for attorney fees, so individual claimants must generally proceed *pro se*. Needless to say, few individual claimants are willing to

---

[23] 47 U.S.C. § 227(b)(3)(A)-(C)("A person or entity may . . . recover actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.").

undertake the expense and ordeal of a lawsuit for the prospect of a winning a few hundred dollars.  Finally, despite being in effect for over twenty years, the prohibition of facsimile advertising in the JFPA appears to be virtually unknown in the public at-large. The confluence of these factors – minimal damages; the inability to obtain counsel; and popular ignorance of the law – effectively preclude individual claims under the JFPA.

This case is no exception.  Despite Alliance Healthcare's transmission of 1,733 facsimile advertisements in multiple states, the only recipients who filed suit were Plaintiffs.  Absent the prospect of incentive awards, the Plaintiffs would not have done so in this case.  Due to the efforts of Plaintiffs and Class Counsel – and in accordance with the Class Settlement Agreement – each person who received a facsimile advertisement from Alliance Healthcare was provided an opportunity to recover all of their statutory damages by completing and returning a simple claim form.  This outcome far exceeds the negative value of an individual claim or the uncertainty of a class action.

### (5).      The Opinions of Class Counsel and Class Representatives

The fifth *UAW* factor also favors approval of the Class Settlement Agreement.  Class Counsel has prosecuted numerous class actions involving alleged violation of the JFPA, for which the ultimate goal is obtaining the full statutory damages for each member of the class. Given the increased stakes of a class action, these cases are invariably defended both capably and vigorously.  In this case, each person who received the Alliance Imaging Fax was provided the opportunity to receive their full statutory damages by completing a simple claim form.  By any measure, this is a successful outcome for the Class Members, and Class Counsel endorses the proposed settlement without reservation.

### (6).      The Reaction of Absent Class Members

The sixth *UAW* factor also supports approval of the Settlement Agreement. Over thirty percent of the Class Members submitted claims, less than one percent opted out, and no one submitted an objection of any kind.

### (7). Public Interest

The seventh *UAW* factor strongly favors approval of the Class Settlement Agreement. The JFPA has gone largely unenforced by the F.C.C. and the other public entities that are primarily responsible for doing so. Additionally, individual actions under the JFPA are rare and little more than a nuisance to large-scale violators of the JFPA. Accordingly, class actions such as this are the only effective means of enforcing this decades-old law.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs Todd S. Elwert, D.C., Inc. and Sandusky Wellness Center, LLC. respectfully request that this Court enter an order: (i) granting final approval of the Class Settlement Agreement; (ii) directing Dahl Administration to complete administration of the Class Settlement Agreement; and (iii) granting an Attorney Fee Award of $288,833.33, litigation expenses of $6,590.72, Incentive Awards of $8,250.00 to each of the Named Plaintiffs; and class administration fees of approximately $24,000. A proposed order consistent with this request has been attached hereto.

Respectfully submitted,

*/s/ Matthew Stubbs*
George D. Jonson (80926)
Matthew E. Stubbs (90759)
MONTGOMERY, RENNIE & JONSON
36 East Seventh Street
Cincinnati, OH  45202
513-241-4722
513-241-8775 (fax)
Email:  gjonson@mrjlaw.com
           mstubbs@mrjlaw.com

*Counsel for Plaintiff Todd S. Elwert, D.C., Inc.*

AND

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
847-368-1500
847-368-1501 (fax)

*Counsel for Plaintiff Sandusky Wellness Center, LLC.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

*/s/ Matthew E. Stubbs*