# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| TODD S. ELWERT, INC., DC, an Ohio corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | CASE NO. 5:15-cv-2223 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | |
| ALLIANCE HEALTHCARE SERVICES, INC., and JOHN DOES 1-10, | ) ) ) ) | MEMORANDUM OPINION |
| DEFENDANTS. | ) | |

===========================

| | | |
|---|---|---|
| SANDUSKY WELLNESS CENTER, LLC, an Ohio limited liability company, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | CASE NO. 3:15-cv-2673 Consolidated Into CASE No. 5:15-cv-2223 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | |
| WOODLAND DIAGNOSTIC IMAGING, LLC; ALLIANCE HEALTHCARE SERIVES, INC.; ALLIANCE HEALTHCARE, INC.; ALLIANCE HEALTHCARE, LLC; AND JOHN DOES 1-10, | ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) | |

This matter is before the Court upon the motion of plaintiffs seeking final approval of the class action settlement agreement (Doc. No. 50 ["Settlement

Agreement"]) and plaintiffs' motion for attorneys' fees. (Doc. No. 51 ["Pl. Mot."].) Neither motion is opposed by defendants.

I. BACKGROUND

In these consolidated class action cases brought pursuant to Fed. R. Civ. P. 23, plaintiffs Todd S. Elwert DC, Inc. ("Elwert") and Sandusky Wellness Center, LLC ("Sandusky Wellness") (collectively "plaintiffs") allege that the defendants Alliance Healthcare Services, Inc., ("Alliance") and Woodland Diagnostic Imaging, LLC ("Woodland") (collectively "defendants") violated the federal Telephone Consumer Protection Act ("TCPA") of 1991, as amended by the Junk Fax Prevention Act ("JFPA"), (47 U.S.C. § 227) (the "Act"), by sending unsolicited advertisement to plaintiffs' fax machines on September 14, 2015, without an opt-out notice required by the Act. (Doc. No. 17 (Elwert Class Action Amended Complaint ["Elwert Compl."]); Doc. No. 1 (Sandusky Wellness Class Action Complaint ["Sandusky Compl."]).) The fax advertisement received by plaintiffs is attached as Exhibit A to plaintiffs' respective complaints (the "Fax Ad").

Elwert's complaint alleges that the defendants sent the Fax Ad and other unsolicited faxes to more than forty other persons. (Elwert Compl. ¶¶ 7, 17, 29.) Elwert describes the class as follows:

> All persons who (1) on or after four years prior to the filing of this action (2) were sent material advertising the commercial availability or quality of any property, goods, or services (3) by or on behalf of Alliance HealthCare (4) via facsimile (5) that did not display a proper opt-out notice.

(Elwert Compl. ¶ 18.)

Sandusky Wellness' complaint alleges that defendants sent the Fax Ad and other unsolicited faxes to more than twenty-five other persons (Sandusky Compl. ¶¶ 2, 12, 15, 31), and describes the class as follows:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of [d]efendants, and (3) which [d]efendants did not have prior express permission or invitation, or (4) which did not display a proper opt-out notice.

(Sandusky Compl. ¶ 18.)

The parties notified the Court that they had reach a settlement agreement on February 26, 2018. (Doc. No. 45.) Thereafter, plaintiffs filed a motion for certification of the class and motion for preliminary approval of the class settlement agreement. (Doc. No. 48.) The Court granted the certification of class and preliminary approval of class settlement agreement, subject to the fairness hearing. (Doc. No. 49.) Plaintiffs filed their motion for final approval of the class settlement agreement and motion for attorneys' fees. The fairness hearing was held on August 30, 2018, and class counsel submitted unreacted billing records. Defendants filed a statement of non-objection to class counsel's submitted attorneys' fees bills. (Doc. No. 53.)

## II. FINAL APPROVAL OF THE CLASS SETTLEMENT AGREEMENT

Under Rule 23(e), no class action can be settled without the approval of the court. Fed. R. Civ. P. 23(e). "A proposed settlement should be preliminarily approved, notice must be given to class members who may be affected, and a fairness hearing should be held wherein all interested parties may comment on the proposed decree." *Lindsey v. Memphis-Shelby Cty. Airport Auth.*, Nos. 99-5159, 99-5162, 2000 WL 1182446, at *5

(6th Cir. Aug. 15, 2000) (citing *Williams v. Vukovich*, 720 F.2d 909, 920–24 (6th Cir. 1983).

> [A] district court's role in evaluating a private consensual agreement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986) (per curiam) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

To guide this analysis, courts have fashioned the following series of factors to determine whether a class settlement action is fair, reasonable, and adequate:

> (1) [T]he risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

These factors are considered in light of "federal law favor[ing the] settlement of complex class actions." *Preston v. Craig Transp. Co.*, No. 3:14 CV 1410, 2015 WL 12766499, at *2 (N.D. Ohio 2015). Following preliminary approval, the class action is presumed to be reasonable, and "an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000); *see also Vukovich*, 720 F.2d at 922.

Here, under the class settlement agreement, each class member who submitted a valid claim form will receive $500.00, for a total of $237,500.00 from the settlement fund.[1] (Settlement Agreement at 480–81.[2]) Class counsel has requested an attorneys' fee award of $288,833.33, which is equal to one-third of the settlement fund. (*Id.* at 481.) Additionally, class counsel requests $6,590.72 for reimbursement of expenses incurred in the pursuit of this action. (*Id.*) Dahl Administration will receive $24,000.00 under the settlement agreement. (*Id.*) Each of the named plaintiffs will receive an "Incentive Award" of $8,250.00 from the settlement fund. (*Id.* at 482.) The remaining amount in the settlement fund ($292,715.95) will be returned to Alliance Healthcare. (*Id.* at 483.)

1. Risk of fraud or collusion

The first factor favors approving the settlement agreement. In assessing settlement agreements, "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991, 2006 WL 891151, at *21 (E.D. Mich. Mar. 31, 2006). Here, there is no evidence of fraud or collusion in the settlement agreement. The interests of the class members and defendants are fundamentally adverse. Moreover, the settlement agreement was the result of an arms-length negotiation facilitated with the assistance of Magistrate Judge George J. Limbert.

2. Complexity, expense, and likely duration of the litigation

The second factor favors approving the settlement agreement. Although cases brought under the JFPA are not especially complex or expensive, no class action is

---

[1] Class members submitted 475 valid claim forms. (Settlement Agreement at 480.)

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

simple. In this case, the parties litigated a number of discovery disputes, conducted written discovery, and took depositions before engaging in settlement negotiations. The settlement agreement will resolve remaining issues and prevent further litigation and discovery expenses.

3. Amount of discovery engaged in by the parties

The third factor also favors approving the settlement agreement. "Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) (quoting *Vukovich*, 720 F.2d at 922). As noted previously, the parties litigated a number of discovery disputes, conducted written discovery, and took depositions before engaging in settlement negotiations. The Court finds that the discovery that was conducted was sufficient to ensure that counsel were well-informed of the facts and matters at issue before reaching the agreement.

4. Opinions of class counsel and class representatives

This factor favors approving the settlement agreement as well. Class counsel states that they have pursued numerous class actions involving alleged violations under the JFPA, for which the ultimate goal is obtaining full statutory damages for each class member. (Settlement Agreement at 487.) Here, each class member will $500.00—full statutory damages. As such, class counsel endorses the proposed settlement "without reservation" as a "successful outcome for the [c]lass [m]embers." (*Id.*) Indeed, class counsel is on firm ground in endorsing the settlement since class counsel achieved the full statutory damages for each of the class members.

5. Reaction of absent class members

A significant factor that favors approval of the settlement agreement is the reaction of the other class members. Over thirty percent of the class members submitted claims, less than one percent opted out, and <u>no</u> class members objected to the settlement agreement. (Settlement Agreement at 488.)

6. Public interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). Likewise, the public interest is served by enforcing the JFPA. Arguably, class actions are the only effective means to enforcing the JFPA because individual actions are unlikely. Therefore, the public interest factor weighs in favor of approving the settlement agreement.

7. Likelihood of success on the merits

The Court is not in a position to assess plaintiffs' likelihood of success on the merits as significant discovery was still underway at the time of settlement, but the other factors strongly favor approving the settlement agreement as fair, reasonable, and adequate.

In light of the aforementioned factors, the Court finds the settlement agreement fair, reasonable, and adequate.

### III. PLAINTIFFS MOTION FOR ATTORNEYS' FEES AND EXPENSES

Here, counsel requests an attorneys' fees award of $288,833.33, which equals one-third of the settlement fund. Counsel also requests $6,590.72 for reimbursement of expenses.

#### A. Attorneys' Fees

Fed. R. Civ. P 23(h) allows the Court to award reasonable attorney's fees. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). An award is reasonable if it is "adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Id.* at 471 (quoting *Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). District courts within the Sixth Circuit have the discretion to select one of two methods for calculating an award of attorneys' fees in a common fund case by using either a percentage of the fund calculation or a lodestar multiplier. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516–17 (6th Cir. 1993). The Sixth Circuit grants district courts discretion to decide which method is most appropriate in a particular case, but requires district courts to "provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee." *Id.* at 516 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). Regardless of how the award is calculated, the final amount must be reasonable. *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983); *Rawlings*, 9 F.3d at 516.

This Court adopts the percentage of the fund method to determine reasonable attorneys' fees here as it is the preferred method in the Sixth Circuit for common fund cases and because it most accurately reflects the results achieved in a case. *Rawlings*, 9

F.3d at 516. *See, e.g.*, *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (using percentage of the fund method to calculate attorney's fees in common fund case); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 WL 764291, *2 (S.D. Ohio Mar. 9, 2007) (same); *Worthington v. CDW Corp.*, No. 1:03-cv-00649, 2006 WL 8411650, at *6 (S.D. Ohio May 22, 2006) (same).

In determining what constitutes a reasonable and fair percentage of the fund, the Sixth Circuit teaches that the following factors are to be considered: (1) the value of the benefit to the class; (2) society's interest in rewarding attorneys who achieve such benefits; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the skill of the litigators on both sides. *Clevenger*, 2007 WL 764291, at *2 (same). *See Smillie*, 710 F.2d at 275.

Here, counsel requests an attorneys' fees award of $288,833.33, which equals one-third of the total settlement fund. Considering the enumerated factors above, the Court finds that awarding attorneys' fees in the amount of $288,833.33 is reasonable.

1. Value of the benefit to the class

Class counsel secured a substantial benefit for class members. The JFPA does not provide for attorneys' fees, so individual claimants generally must proceed *pro se*. As such, many class members might not have pursued an individual suit. In fact, class counsel states that no individual claims have been brought against Alliance Healthcare in connection with the faxes at issue. (Pt. Mot. at 525.) Through the settlement agreement,

9

each class member will receive full statutory damages of $500. As such, the value of the benefit to the class members weighs in favor of granting the requested attorneys' fees.

    2. <u>Society's interest in rewarding attorneys who achieve such benefits</u>

This factor also favors awarding the requested attorneys' fees. Awarding attorneys' fees in JFPA class actions benefits society by encouraging attorneys to pursue JFPA claims through class actions. As mentioned multiple times, class actions are arguably the only effective way to enforce the JFPA as individual suits are unlikely.

    3. <u>Whether the services were undertaken on a contingent fee basis</u>

Counsel undertaking the action on a contingent fee basis also supports awarding their requested attorneys' fees. Counsel accepted the action on a contingent fee basis with the risk that they would receive no repayment. Counsel has not received any compensation to date.

    4. <u>Value of the services on an hourly basis</u>

The JFPA does not allow for attorneys' fees. Therefore, individuals must proceed *pro se* or pay an hourly rate to hire an attorney. Documentation produced by class counsel establishes that they devoted more than 427 combined hours to this action.[3] (Doc. No. 50-2 ["Stubbs Decl."].) Using counsels' proposed rate of $400.00/hour, this would have resulted in fees of approximately $171,000.00 for plaintiffs' counsel. The Court finds that the substantial amount of work done by class counsel and the value of their work on an hourly basis supports awarding their attorneys' fees.

---

[3] Montgomery, Rennie & Jonson worked 292.1 hours and Anderson+Wanca worked 135.4 hours. (Stubbs Decl. at ¶¶ 7, 8.)

5. Complexity of the litigation and skill of the litigators on both sides

The fifth and sixth factors favor awarding the requested attorneys' fees as well. Class actions are inherently complex. The parties have litigated a number of discovery disputes, conducted written discovery, and took depositions before engaging in settlement negotiations. Counsel here are highly competent and experienced litigators who worked professionally and collaboratively to secure favorable results for the class members.

6. Additional factors favoring awarding the requested attorneys' fees

Although not an enumerated factor to consider, the Court considers it noteworthy that defendants filed a statement of non-objection to this award of attorneys' fees. (Doc. No. 53.)

Moreover, the Court finds that counsel's request for one-third of the fund is an amount frequently awarded by district courts in the Sixth Circuit. *See, e.g.*, *Worthington*, 2006 WL 8411650, at *6 ("[P]ercentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created." (quoting *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249–50 (S.D. Ohio 1991)); *Clevenger*, 2007 WL 764291, at *3 (finding an award of 29% of the fund was "modest" and listing cases with awards between 20% and 50%).

For these reasons, the Court grants plaintiffs' motion for award of attorneys' fees.

**B. Expenses**

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement." *In re Cardizem*, 218 F.R.D at 534–35. In determining what are

reasonable out-of-pocket litigation expenses, courts should consider what counsel would charge their hourly fee-paying clients. *Id.* Reasonable expenses include the costs of document production, consulting with experts, travel, and other litigation-related expenses. *Id.*

Here, class counsel requests $5,048.31 for expenses incurred in the pursuit of this action.[4] Class counsel has adequately documented the expenses incurred and the Court finds that the expenses for which counsel seeks reimbursement are of the type routinely charged to hourly fee-paying clients. As such, counsel is entitled to reimbursement from the common fund for these expenses.

## IV.    CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for final approval of the class settlement agreement (Doc. No. 50) is **GRANTED**. The settlement agreement is hereby **APPROVED**, inasmuch as it is a fair, reasonable, and adequate resolution of this litigation. All terms of the proposed settlement are **APPROVED**. Further, plaintiffs' motion for attorneys' fees (Doc. No. 51) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**. The Clerk is directed to close this file.

**IT IS SO ORDERED**.


Dated: September 21, 2018

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[4] $5,048.31 to Montgomery, Rennie & Jonson and $1,542.41 to Anderson+Wanca. (Settlement Agreement at 481.)